UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IMPERIUM LOGISTICS, LLC and MICHIGAN BUSINESS LAW CENTER, PLLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TRUIST FINANCIAL CORPORATION, FRAUDSTER #1, and FRAUDSTER #2,<br><br>    Defendants. | Case No. 23-10001<br>Honorable Laurie J. Michelson |

### OPINION AND ORDER GRANTING IN PART TRUIST'S MOTION TO DISMISS [6]

Imperium Logistics, LLC, and its counsel, Michigan Business Law Center, PLLC, were supposed to be the recipients of a $150,000 settlement payment. But they never received the money. Instead, they say, Fraudster 1 hacked MBLC's emails and changed the wiring instructions for the payment so the money was deposited into Fraudster 1's Truist Financial Corporation bank account. Plaintiffs also allege that Fraudster 1 had help on the inside from Fraudster 2, an unknown Truist employee. Plaintiffs say that, between the involvement of Fraudster 2 and the inconsistencies on the wire-transfer order, Truist had actual knowledge that it was accepting a fraudulent wire transfer. So they sued Truist, Fraudster 1, and Fraudster 2 for fraud, violations of Michigan's Uniform Commercial Code (UCC), and common-law and statutory conversion.

Truist moved to dismiss all claims against it. (ECF No. 6.) For the following reasons, the Court dismisses the fraud and UCC claims against Truist, but the common-law and statutory conversion claims will survive.

## I.

Because Truist seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in Plaintiffs' complaint as true and draws reasonable inferences from those allegations in their favor. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

In 2022, Imperium settled a claim with an unknown entity (hereinafter referred to as the settling entity) for $150,000. (ECF No. 1, PageID.14.) The Michigan Business Law Center (MBLC) represented Imperium in that case. (*Id.*) The settlement agreement provided that the settlement payment was to be wired to MBLC's client-trust account. (*Id.*) It also contained the details needed to facilitate the settlement payment, including the payee name, payee address, bank name, bank address, bank routing number, bank account number, and name on the bank account where the settling entity was to send payment. (*Id.*)

Plaintiffs say that at some point before the settlement payment was sent, unknown Fraudster 1 "hacked into the email account of either or both of Settling Entity's counsel and/or MBLC and 'shadowed' those accounts, their respective email addresses, domain names, and internet protocol addresses[.]" (PageID.15.)[1] Fraudster 1 was then able to send an email to the settling entity's counsel "from"

---

[1] All citations are to ECF No. 1 unless otherwise noted.

MBLC—without its knowledge— stating, "Kindly hold on wire[.] Please confirm back so i can provide wiring info[.] The wire info provided is on hold[.] I await your urgent response Thanks[.]" (*Id.*) A few hours later, Fraudster 1 sent another email that appeared to come "from" MBLC to the settling entity's counsel, stating, "Kindly process wire to the updated wire info[.]" (*Id.*) The "updated" wire information changed the recipient bank name from "Level One Bank" to "BB&T"—a defunct bank that merged with Sun Trust banks to become Truist in 2019—and altered the routing number and the bank account number. (PageID.15–16.) All other information, including the payee name, payee address, the bank address, and the name on the bank account, stayed the same. (*Id.*)

According to Plaintiffs, Fraudster 1 did not work alone. They allege that Fraudster 1 "informed Fraudster 2, an employee of Truist, to watch for and accept the fraudulent wire transfer into a Truist account in the name of Fraudster 1, notwithstanding that the account at Truist was not and had never been in the name of either MBLC or Imperium; and notwithstanding that on that date BB&T did not exist and did not then, nor had it ever maintained a branch bank at 30201 Orchard Lake Road, Farmington Hills, Michigan 48334" as set forth in the doctored wiring instructions. (PageID.16.)

About two weeks after the two fraudulent emails were sent, the settling entity wired the $150,000 settlement payment according to the new instructions. (PageID.16.) Plaintiffs say that Fraudster 2 "accepted" the settlement payment into Fraudster 1's account at Truist, despite three clear inconsistencies in the wire-

transfer order. (*Id.*) One, the name on the account did not match the payee name or the name on the bank account fields. (*Id.*) Two, BB&T no longer existed at the time of the transaction—that entity had merged with Sun Trust Banks in 2019 and been renamed Truist. (PageID.17.) And three, neither BB&T nor Truist had a location in Farmington Hills, Michigan. (*Id.*)

Ultimately, Fraudster 1, "with the knowledge and cooperation of Fraudster 2," promptly withdrew the settlement funds from the Truist account. (*Id.*)

So Imperium and MBLC, being deprived of their settlement payment, sued Truist, Fraudster 1, and Fraudster 2 for fraud, violations of the UCC, common-law conversion, and statutory conversion in Michigan state court. (ECF No. 1.) The case was removed to this Court. (*Id.*) In response to the complaint, Truist moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). Fraudster 1 and Fraudster 2, being unknown, have not yet been served.

Given the adequate briefing, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

In deciding this motion to dismiss, the Court "construes the complaint in the light most favorable" to Plaintiffs and determines whether their "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City*

*of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.

### A. Fraud

The fraud claim is relatively simple to address. Plaintiffs "concede that Count I of their complaint, a fraud claim, fails to state a claim against Truist, only." (ECF No. 9, PageID.88.) As such, the Court will dismiss that claim as to Truist.

### B. UCC

Now to Plaintiffs' claim under Michigan's Uniform Commercial Code. As Truist points out, the complaint is not clear under which provision of the UCC Plaintiffs are seeking to bring a claim. (ECF No. 1, PageID.22–23.) But in their response, Plaintiffs identify a specific provision as the basis of their UCC claim. (ECF No. 9, PageID.109.) So the Court proceeds to analyze the motion with that specific provision in mind.

Article 4A of the UCC governs funds transfers. Under the language of the UCC, the parties agree that the settling entity was the "originator," JP Morgan Chase was the "originator's bank," MBLC was the intended beneficiary, Fraudster 1 was the actual beneficiary, and Truist was the "beneficiary's bank." *See* Mich. Comp. Laws §§ 440.4603(c), 440.4604(c), (d).

Article 4A provides rules for when, like here, "a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons[.]" Mich.

5

Comp. Laws § 440.4707(2). Specifically, it provides that "[i]f the beneficiary's bank . . . knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur." *Id.* at § 440.4707(2)(b). In other words, if a beneficiary's bank has knowledge of a mismatch between the name associated with the bank account number and the listed beneficiary, and transfers the funds to an *un*intended beneficiary, the transfer was not legally accepted. Plaintiffs say that is what happened here—Truist knew the account number on the wire-transfer order was associated with a name other than MBLC, so "no person" had "rights as beneficiary" and acceptance of the wire transfer never occurred.

Lack of acceptance has consequences under the UCC. For one, only "acceptance of the order by the bank obliges the sender to pay the bank the amount of the order[.]" Mich. Comp. Laws § 440.4902(2). So here, if there was no acceptance, JP Morgan would not be obligated to pay Truist the amount of the order. And two, the settling party's "obligation . . . to pay its payment order is excused if the funds transfer is not completed by acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary of that sender's payment order." Mich. Comp. Laws § 440.4902(3). So the settling entity would also be relieved of its obligation to pay the wire transfer amount to JP Morgan if it was shown that acceptance did not legally occur. The provision goes on to say that "[i]f the sender of a payment order pays the

6

order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay." Mich. Comp. Laws § 440.4902(4).

Indeed, the comments to the non-acceptance provision reveal an intent to alleviate both the originator's and originator's bank's obligations to pay the transfer order. *See* Mich. Comp. Laws § 440.4707(2)(b) cmt. 2 ("On the other hand, if Beneficiary's Bank knew about the conflict between the name and number and nevertheless paid [the wrong customer], subsection (b)(2) applies. Under that provision, acceptance of the payment order of Originator's Bank did not occur because there is no beneficiary of that order. Since acceptance did not occur Originator's Bank is not obliged to pay Beneficiary's Bank. Section 4A-402(b). Similarly, [Originator] is excused from its obligation to pay Originator's Bank. Section 4A-402(c)."). This is all to say that, if Truist knew that the information in the wire-transfer order was inconsistent with its own account information and transferred the funds anyway, it must ultimately "take[] the loss." *See id.*

Notably missing from this remedial scheme is any obligation for the beneficiary bank to pay damages to the intended beneficiaries of the transfer. Plaintiffs, who are akin to third-party beneficiaries to the series of transactions that formed the wire transfer, have no role to play here. Put differently, if knowledge is proven, the UCC remedies the situation by making Truist bear the loss and returning JP Morgan and the settling entity to their pre-wire-transfer positions. But the available statutory remedies do not give Plaintiffs any cause of action.

Other courts have come to the same conclusion. *See Simple Helix, LLC v. Relus Techs., LLC*, 493 F. Supp. 3d 1087, 1103–04 (N.D. Ala. 2020) (dismissing for lack of cause of action because "while [the UCC] expressly create[s] rights in favor of the parties to the payment orders comprising a funds transfer, they remain silent as to the rights of a third party to a miscarried funds transfer"); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (concluding "that [the remedial provisions] allows each sender of a payment order to seek refund only from the receiving bank it paid"); *Approved Mortg. Corp. v. Truist Bank*, No. 122CV00633, 2022 WL 16635290, at *6 (S.D. Ind. Nov. 2, 2022) (quoting *Grain Traders*, 160 F.3d at 102); *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, 516 F. Supp. 3d 535, 541 (W.D.N.C. 2021), *aff'd*, No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022) ("Here, the Court finds Nirav seeks extension of existing law in making arguments about the applicable provisions governing its claim. Nirav failed to provide authority that they have statutory standing as an intended beneficiary to make any claims under the UCC."); *Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA*, No. 221CV12835, 2022 WL 16706948, at *4 (D.N.J. Oct. 3, 2022) ("[E]ach party is obliged only to a party with whom that party has privity. Accordingly, the Court is persuaded by the Second Circuit's analysis [in *Grain Traders*] that privity between the sender and the bank from which the sender seeks a refund is required to invoke [the UCC's] money-back guarantee.").

And this Court agrees with the *Simple Helix* court that such a conclusion is in line with the stated purpose of Article 4A: "In the drafting of [Article 4A's] rules, a

8

critical consideration was that *the various parties to funds transfers* need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." Mich. Comp. Laws § 440.4602 cmt. (emphasis added); *see also Simple Helix*, 493 F. Supp. 3d at 1103–04 ("Naturally, a third party not actually participating in a funds transfer retains no interest in modifying its behavior in view of the rights and obligations Article 4A sets forth, even if that third party suffers an injury from an Article 4A funds transfer."). So the Court finds that the non-acceptance provision of the UCC provides no cause of action to Plaintiffs.

In sum, Plaintiffs are neither the original senders of the wire transfer or that sender's bank, and thus, they cannot recover under the UCC provision they seek to enforce. As such, Plaintiffs' UCC claim against Truist will be dismissed.[2]

### C. Conversion

Truist also believes Plaintiffs' common-law and statutory conversion claims against it should be dismissed because the UCC preempts such claims.

---

[2] Plaintiffs ask that "they be granted leave to file an amended complaint more specifically identifying the applicable sections of the UCC upon which they seek relief." (ECF No. 9, PageID.108 fn.4.) The Court denies this motion. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("A request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend."). The Court cannot evaluate whether an amended complaint is proper and not futile without seeing the proposed amended complaint and learning which "applicable sections of the UCC" Plaintiffs seek to invoke. *See id.* ("Normally, a party seeking an amendment should attach a copy of the amended complaint."). And it appears that there are no additional allegations that Plaintiffs could plead that would correct the deficiencies identified by the Court here. Indeed, they used their response brief to identify the provision they claimed to be relying on. So leave is denied.

The UCC provides some support for Truist's argument. A comment to Article 4A states, "[t]he rules that emerged [from the drafting of Article 4A] represent a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." Mich. Comp. Laws § 440.4602 cmt. Relying on this language in interpreting Tennessee's UCC, the Sixth Circuit found that "Article 4A displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A." *Wright v. Citizen's Bank of East Tennessee*, 640 F. App'x 401, 406 (6th Cir. 2016). In finding that the UCC preempted the claims at hand, the Sixth Circuit contrasted the case before it with cases that "involved allegations that the bank applied funds that it knew were illegally obtained, or tortiously enriched itself." *Id.* at 409. This middle-ground approach aligns with the general provisions of the UCC, which state that "[u]nless displaced by the particular provisions of this act, the principles of law and equity . . . shall supplement its provisions." Mich. Comp. Laws § 440.1103(2).

The Court is not persuaded that the UCC preempts Plaintiffs' conversion claims against Truist. For one, the Court agrees with Plaintiffs that Truist's support for its preemption argument is distinguishable from the case at hand. Truist relies on *Kirschner v. Wells Fargo Bank*, which held that the plaintiffs' common-law and

10

statutory conversion claims were preempted by the UCC. *See* No. 21-10785, 2021 WL 5545957, at *3 (E.D. Mich. July 19, 2021). There, the court found that the conversion claims would require the defendant bank to act in a way that was inconsistent with the UCC. *See id.* at *3 ("The essence of Plaintiffs' claims against Wells Fargo is that it refused to cancel or refund the transfer, which it was not required to do under Article 4A."). The court explained that the UCC only contemplated cancellation of a transfer if "the receiving bank agrees[.]" *Id.* (citing Mich. Comp. Laws § 440.4711(3) ("After a payment order has been accepted, cancellation, or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.")). But the UCC does not mandate that the receiving bank agree to a cancellation. So the court found that holding the bank liable for an act within its discretion—refusing to cancel an order with the wrong beneficiary—would be contrary to the UCC.

Here, Plaintiffs are not alleging that Truist erred by not cancelling the transfer or refunding the money *after* it had accepted the order. Instead, they are alleging that Truist knew it was accepting a fraudulent order and thus, acceptance never occurred. So Plaintiffs' claims would not impose an obligation on Truist that is inconsistent with the UCC. Indeed, the *Kirschner* court recognized that allegations of knowledge may separate preempted claims from non-preempted claims. It specified, "Plaintiffs do not allege that Wells Fargo knew or should have known of the fraud before accepting the funds." 2021 WL 5545957, at *3 n.2. And as discussed, the UCC provides that no acceptance occurs when a bank accepts a funds transfer it knows

11

has internal inconsistencies between the name and account number. Mich. Comp. Laws § § 440.4707(2)(b). So the Court finds that Plaintiffs' conversion claims do not attempt to create liabilities inconsistent with the UCC.

Similarly, the other cases in Truist's briefing do not address a sufficiently analogous situation. Like the court in *Kirschner*, in *Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, the court found that "[t]he receiving bank has the discretion to cancel or amend a payment order after accepting it," and so imposing liability on JPMorgan for not exercising its discretion would be contrary to the UCC. 614 F. Supp. 3d 553, 559 (E.D. Mich. 2022). As this case addresses Truist's knowledge at the time it received the transfer order—and not its obligations post-acceptance—the Court declines to follow the reasoning in *Shecter*. And the court in *Attisha Enterprises, Inc. v. Capital One, N.A.*, specifically found that the plaintiff's negligence claim against Capital One for acceptance of a fraudulent wire transfer was preempted because the bank was only liable under the UCC if it "knew the account name and number refer to different persons. There is no requirement Capital One exercise 'ordinary care' in making this determination." 505 F. Supp. 3d 1051, 1058 (S.D. Cal. 2020). Here, Truist has not identified any conflicting duties imposed by a conversion claim, and as the Court has stated, Plaintiffs allege knowledge in line with UCC requirements.

Likewise, *Zeal Global Services Private Limited* does not move the ball in Truist's favor because it too did not involve allegations of knowledge. *See Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1309–10 (N.D. Ga. 2020)

("As Defendants correctly point out, Zeal does not allege that the Banks 'actually knew, at the time of the transfer[s], that the name on the transfer[s] did not correspond with the account numbers.'"). Simply put, Plaintiffs' allegations that Truist had actual knowledge that the transfer was fraudulent distinguishes their conversion claim from others that the UCC may preempt. *See Wright*, 640 F. App'x at 409.

And the Court clarifies that it understands Plaintiffs' allegations to mean that Truist actually recognized that the transfer was fraudulent before it accepted it—not that Truist *should have* recognized the transfer was fraudulent because of the inconsistencies. *Cf. Bud's Goods & Provisions Corp. v. Doe*, 630 F. Supp. 3d 320, 325 n.5 (D. Mass. 2022) (finding "no merit" in plaintiff's assertion that defendant had actual knowledge where the wire transfer purported to send money to a business account, but the named account was a personal account, because requiring defendant to "undergo a time consuming review and investigation of payment orders to determine whether gratuitous notations included therein create possible conflicts with the statutorily required identifying information . . . would undermine Article 4A's purpose[.]"). Thus, there is nothing inconsistent between liability for such knowledge to a third party and the obligations provided under the UCC.

At bottom, the Court has found that the UCC does not provide recovery to third parties, like Plaintiffs, where a bank knows a transfer is fraudulent and completes it anyway. In other words, the UCC takes no position on whether third parties can recover damages in such a situation. And while that may mean that third parties

13

cannot recover under the UCC for such damages, it does not mean that common-law claims seeking to enforce third-party rights are inconsistent with the UCC. *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003) ("[A] provision of state law that requires a receiving or beneficiary bank to disgorge funds that it knew or should have known were obtained illegally when it accepted a wire transfer is not inconsistent with the goals or provisions of Article 4A."); *see also Simple Helix, LLC*, 493 F. Supp. 3d at 1108 ("[B]ecause Article 4A does not address the circumstances forming the basis of Simple Helix's allegations against Wells Fargo, Simple Helix's conversion claim does not create rights, duties, and liabilities inconsistent with those stated in Article 4A. Furthermore, the instant conversion claim does not contravene Article 4A because, as discussed previously, neither [the non-acceptance provision] nor any other relevant Article 4A provision provides a right of action in favor of a third party to a funds transfer[.]").

In sum, because Plaintiffs' conversion claim rests on Truist's knowing acceptance of a fraudulent order, the claim is not inconsistent with or contrary to the UCC. *See Wright*, 640 F. App'x at, 406 ("Article 4A displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A."). Moreover, the UCC does not speak to what rights a third party has in such a situation, so the claims do not "arise out of a situation addressed" by it. *See id.* For

those reasons, the claim is not preempted. Plaintiffs may proceed with their common-law and statutory conversion claims against Truist.[3]

## IV.

Plaintiffs concede they have not stated a fraud claim against Truist and, for the foregoing reasons, the Court finds that they have no cause of action under Michigan Compiled Laws § 440.4707(2)(b), so their fraud and UCC claims will be dismissed against Truist. But their conversion claims against Truist may proceed as they are not preempted by the UCC.

**SO ORDERED**.

Dated: August 10, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

---

[3] In reply, Truist argues that "[n]one of Plaintiffs' allegations support a plausible claim that 'Fraudster 2' even exists" and that "[i]rrespective of whether Plaintiffs' conversion claims are preempted, Plaintiffs have failed to state a claim for common law or statutory conversion as a matter of law." (ECF No. 11, PageID.133.) As no arguments—other than preemption—were raised against the conversion claims in Truist's opening brief, the Court will not address them here. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); *see also Stephens v. Nat'l City Corp.*, No. 20-3746, 2021 WL 3027864, at *3 (6th Cir. June 14, 2021).